Thank you and may it please the court. I'm Stephanie Schuster here on behalf of the appellant Rite Aid Corporation and I'd like to reserve three minutes for rebuttal. We'll keep an eye on the clock we'll try to help you. Thank you. California's equitable estoppel doctrine requires a non-signatory who asserts claims that rely or depend on a contract to accept that contract's burdens including any arbitration provision and any delegation clause. Counsel in this case, what contract do the plaintiffs rely upon? They're seeking damages for violation of California and common law. I don't see them invoking any contractual language in connection with their alleged causes of action. So to what what contract are you referring? Sure your honor the contracts at issue are the contracts between Rite Aid pharmacies and the plaintiffs insurance companies or pharmacy benefit managers. I mean they're they're claiming if I understand it correctly that Rite Aid committed fraud in the in the if you will the amount they showed as usual and customary. They don't refer to the contract in terms of they're trying to get damages for breach of contract do they? Well they go out of their way to avoid doing that but in essence they are necessarily relying on an alleged breach of the contractual obligation to make out their allegations of fraud and misrepresentation of breach of duty because whether the prices that Rite Aid reported were as plaintiff content false and inflated necessarily turns on the pharmacy contracts and specifically what they require pharmacies to report as a usual and customary price and how they define usual and customary price which is something that is governed and specifically defined in each of these pharmacy contracts. Are they all defined the same way or because Stafford argues I believe that there's an industry standard so it's well understood what usual and customary means. They're all separately defined and differently defined as we point out in our briefing and if you just a comparison of the different provisions there are similarities to be sure but they are different and unique to each pharmacy contract each has different terms and while there may in fact be an industry standard the relevance of that standard it can only be to the proper interpretation of those contract terms but it is the contract itself that gives rise to the alleged obligation to report usual and customary prices the obligation that plaintiffs necessarily claims that the Rite Aid pharmacies breached here as the basis for his claims in this case. So if one of the so by contract eliminated it then at least with respect to that contract he wouldn't have a fraud claim. Is that your argument? Is that possible? It's certainly possible your honor but our argument is slightly different it's that the only source of the obligation in particular the only legal source of the obligation to report any specific price as a usual and customary price comes from the has conceded but he tries to deny it on appeal he's conceded in sworn interrogatory responses that he is in fact relying on the pharmacy contracts to make out his claims against Rite Aid in this case. So where is that in the record? That is in his interrogatory responses are response to interrogatory six seven and eight at ER 241 to 245 your honor. He was asked specifically to identify each that Rite Aid was obligated to report any specific price the usual and customary price and then critically in interrogatory eight the usual and customary price equal to the savings program price. He responded unequivocally quote the contracts and agreements between Rite Aid and pharmacy benefit managers will support this theory. So does it really matter the source of the duty to report? What if it were a statutory duty or administrative duty or something like that that's independent of the contracts? It does matter the source of the duty because if it was your honor independent the duty arose independent of the contracts it claims were fully independent of this contractual duty and we wouldn't have an equitable estoppel argument here. But here it's it's undisputed this duty arises from the contracts and plaintiff has conceded that he is relying on them at least in part and that's all that is necessary under California law for equitable estoppel to apply. But isn't in this situation isn't that just more of an evidentiary circumstance of how he will prove that they made the statements and why? I don't think so your honor. I think in this circumstance he can he can prove the statements that were made by proving what prices were reported. Critically he needs to prove that they were as he says false and inflated and to do that requires a comparison between what was reported and what the contract required Rite Aid to report and only if there's a deviation from the contractual obligation can the plaintiff demonstrate that these prices were false and inflated as he contends showing his necessary reliance on the contract terms to make out his claims. So even if he has no even if Rite Aid has no obligation at all to report usual and customary to the pharmacy managers if if Rite Aid takes it upon itself to report the usual and customary price doesn't have to do it accurately. Sure it would have to do it accurately if there were an understanding of that definition if it took upon itself and it would have a duty to the insurers to do so accurately but here that's not this case. This case is about a specific contractual requirement to report a specifically defined usual and customary price which the plaintiff acknowledges with those interrogatory responses. The district court misapplied California law by rejecting equitable estoppel here on the ground that plaintiff's claims do not sound entirely in contract but under California law a claim doesn't have to sound entirely on a contract. Reliance on contract terms even if not exclusively is all that is required for equitable estoppel under California precedent. District Court also exceeded its authority under the Federal Arbitration Act when it held alternatively even if equitable estoppel applies the plaintiff's claims are not arbitrable. The pharmacy contracts all of them delegate arbitrability disputes to the arbitrator and neither plaintiff's status as a non-signatory, his role as a consumer or his level of sophistication is irrelevant or sufficient to give the court authority to decide delegated questions. Do you have any Ninth Circuit law that Brennan is that the Ninth Circuit case? That is a Ninth Circuit case where this court said you know our holdings should not be read to foreclose enforcing ruling corporation delegation clause based on the consumer status or level of sophistication of the parties. What I'm asking is in connection with the delegation doctrine there's some language from the Fifth Circuit of the court having the obligation to decide whether there is a contract and then secondly if there is no delegation doctrine then the court has to decide who decides the entry and access to gateway basically but if there is a delegation clause then they don't leave that to the arbitrator basically. Do we have any case like that? You do your honor but I think more importantly the Browning. Well I think what Brennan discusses it certainly discusses the delegation and when there's a delegation clause the court can't resolve that issue but this goes back to the Supreme Court's decisions in first options versus Kaplan to Renner Center versus Jackson and most recently just a couple of years ago in the Henry Schein case the Supreme Court made clear that although the presumption is that courts will resolve questions of arbitrability if the contract includes a delegation clause the court lacks authority to decide questions of arbitrability just as a court is not allowed to decide merits issues that the parties have delegated to the administration it can't decide arbitrability issues. Have we held that applies to unsophisticated parties or have we left that out? Thank you your honor yes in the Brennan case the court noted excuse me the Brennan case the court noted that the question the court didn't need to resolve it in that case but made very clear that the decision should not be read to foreclose holding that a rule incorporation delegation clause to be applied to unsophisticated parties noting that no circuit had had ever invalidated on that ground. And have we held that it could apply to unsophisticated parties or have we left that an open issue? Again that was left as an open issue pardon me your honor that was left as an open issue in the Brennan case but the three circuits that have squarely addressed this question the third fifth and sixth circuits have directly held that the level of sophistication and consumer status don't matter and that makes sense because the Supreme Court has made very clear that the clear and unmistakable standard is a rule of contract interpretation not a rule of the contracts formation validity or enforceability language that matters not the circumstances and for that reason the district court should not have addressed the questions of arbitrability including waiver and scope in the first instance and while we think those rulings were erroneous neither should this court address them but if to just add a note on waiver if this court is going to decide to address it notwithstanding the delegation clause Friday did not waive its right to arbitration in particular I'm puzzled with that because you had two motions to dismiss that were litigated you had discovery and then you come up move to compel arbitration isn't that more than adequate to show that you waive the issue I mean they would certainly be went your way no your honor for several reasons I'll start from the backwards with the prejudice the statute of limitations issue they got the benefit of being able to correct their complaints and replete but my point counsel is that if if if they had to go back then would there not be prejudice to them of having to relitigate an issue that they thought was resolved no there having to relitigate an issue that they thought was resolved on the statute of limitations ground but more importantly so you could concede that concede what your honor you would concede the statute of limitations issue but were sent back yes we we moved to dismiss on statute of limitations ground they for granted it dismissed the complaint without prejudice plaintiff repleted and there has been no further litigation on statute of limitations so there's no but if it were to go back but were to go back to the district court and not to arbitration you're conceding that the statute of limitations issue is no longer on the table you've conceded that no your honor we're not conceding that okay so then there could be prejudice the statute of limitations issue on the current complaint has not been litigated at all in any motion or decided I just want to be sure you understand that from my perspective prejudice would ensue to them if it were remanded as part of the prongs of the waiver issue sure your honor well you do want to save rest of your time by the way you're down in two minutes yes I'd be happy to save the rest of my time for a while thank you okay so mr. Love I bet you don't agree with her good morning your honors may it please the court Andrew Love for the plaintiff appellee Brian Stafford what's an important distinction in this case compared to the majority of cases that involve non-signatory defendants that are seeking to compel arbitration against a signatory plaintiff this is it this is one of those very rare cases with involving a non-signatory plaintiff and here the plaintiff didn't sign the contract hadn't even seen the contract before filing the complaint and could not have because it was confidential and so right it here seeks to break new ground they don't say any case where equitable estoppel applies in the non-signatory context where the where the plaintiff had not seen the contract they rely on JSM Tuscany versus Superior Court which is where the Court of Appeal first addressed the issue of a non-signatory plaintiff I believe the only one in California that actually found equitable estoppel applied and there what the court held in this context was that the claims not only did the claims have to be based on the failure to perform under the contract but also importantly there was a pre-existing relationship between the non-signatory plaintiff and other parties to the contract and the court said that that was particularly germane to the finding of equitable estoppel in the non-signatory plaintiff context the only other case that defendants cite with regard to where a non-signatory plaintiff was held bound is a unpublished case of this court Steiner versus Brooksdale Senior Living where again the plaintiff's son was the one who signed the contract and specifically the complaint was based on the failure to perform under the contract what are the elements of Mr. Stafford's claim if we eliminate the contract obligation of writing so if there there is no contract how would you define his claim his record found without relying on the contract without relying on contract obligation so that the claim is you know there's a there's a duty under independent sources of the contract from industry standards and California consumer laws which prohibit a deceptive practice or misrepresentation in the California consumer laws without reference to the contract it's a misrepresentation knowing this is based on your theory without the contract so Rite Aid has essentially created a scheme of a two-tiered pricing system and so they but where they have not reported as usual and customary prices lower prices from the RX savings program and by doing that it over reported to the P the PDM and what's their obligation to report to them it's not the contract it's as a district court found under industry standards and in fact the NC PDP creates these standards there was a required form that the pharmacies have to that right it has to has to fill out with the with a usual customary pricing and it's under these obligations which they failed and then the the prices were the over inflated prices was a misrepresentation and a deceptive practice under California consumer law so without any contract with these pharmacy managers industry standard I'm not sure what that means in this context but every pharmacy sales company you know Rite Aid or CVS or on their own report to the managers there's no need for the contracts is what you're saying is there any is that the theory that is a theory that the district court plausibly held that the allegations under that theory were plausibly pled and so here's a under California law if claims could be fully viable without reference to a contract which the district court found equitable doesn't apply. Let me ask you this, as you know Ms. Schuster indicated that in your answers to I believe she said the interrogatory that you answered positively that you were relying on a certain number of contracts do you dispute that? Yes very much so the interrogatory asked what contracts and Webster's dictionary definition means provide a basis for well that's not the only definition of support if you look at Webster's there's an alternate definition even higher in the list which is to substantiate or to corroborate and I think what's important is the full answer to this interrogatory asking you know to identify contracts supporting Rite Aid's obligations included many more contracts it was a broad this is at ER 242 it wasn't just the contracts between Rite Aid and the PBMs and the TPPs it was also contracts with PBMs and employers unions and government entities and it just can't be the case that when plaintiff answered this interrogatory it meant that all of these various contracts you know were the basis for his claims. So is the term usual and I know you're talking about common law you're talking about our consumer protection law 17,200 but how does usual and customary pricing then become legally enforceable? It's legally enforceable because under the California consumer laws Rite Aid was obligated not to engage in deceptive practices and not to misrepresent not to make misrepresentations in a commercial setting which is precisely what they did. But it's like you're saying they're they're Joe and Sally and they have a contract between them and Joe falsely made certain statements to Sally I wasn't part of that contract but I want to rely on that misstatement for my own claim. How does that work? I think the difference here is we're in a commercial a commercial setting and under California consumer laws their business is required not to misrepresent not to engage in this deceptive scheme where consumers are then you know paying more for their their copayments. So bottom line from your perspective because you claim that Rite Aid deceived these pharmacy managers and because your client allegedly got product that was overpriced as a result of that that's all you need under California and common law right? Yes, yes. Do you have a case that best substantiates that position? I think the closest cases are Cranber versus Toyota and from this court 705 Feb 3rd 1122 and and also Murphy versus DirecTV 724 Feb 3rd at 1231 and also in a footnote in Murphy where it talks about how equitable estoppel is particularly inappropriate when plaintiffs seek protection of consumer protection laws that are not intimately related with the contract. Why get your point about equitable estoppel? My question was kind of back to I think you threw this question. You got to have a duty somewhere and you're not part of the contract you're saying you're saying your client was cheated but yet the contract that set the price from your perspective is you're not part of it. It seems quite random I mean I could almost pick anybody out in the neighborhood where they had a contract dispute and if I bought from their store I could say you know they didn't you know they breached their supply contracts and I'm entitled to It has to do with we have a consumer who's who's paying more than they should have because of these deceptive practices and I would point the court to the the district courts denial of the motion to dismiss at ER 69 where it kind of lays out how Rite Aid owes its duty because they're conveying pricing information in a commercial setting and they have the students who report the information accurately and that although there are these various sources of this standards and that the complaint plausibly alleges California consumer violations without reference to the contract. Can I ask just about the complaint? I recognize in paragraph 52 of the complaint it references Rite Aid tried to avoid confine with its contractual obligations and accepted industry standards and then goes on to mention federal and state law. But where in the complaint is the best explanation of your theory that Rite Aid had an obligation under industry standards to report these prices to the PBMs and failed to do so because that that seemed to be the one place that actually references industry standards. Also ER 91-92 paragraphs 28-31 where it talks about the NCPDP setting industry standards. I think what was critical was the standardized form that was required to be filled out and to report the usual and customary prices and so there and then a definition of usual and customary prices from the standard and the obligation. So opposing counsel says well all the definitions of usual and customary prices and the contracts vary from contract to contract and I also ask well could the contract itself say that it doesn't include the RX savings program and would that then be fraudulent? So in your theory I guess since we're not looking at the contracts say that all of the contracts Rite Aid had with the PBMs accepted excluded the RX savings program from usual and customary prices. Are you saying that their report of usual and customary prices would still be fraudulent and give you a basis for a claim? Your Honor, you're saying if the contract is explicitly excluded? Right. I'm not sure the answer to that. Here that isn't the case? But wouldn't you have to say that's necessarily fraudulent because otherwise he wouldn't have a claim in the absence of a contract. So if there is some obligation to report usual and customary prices according to your definition then even if the contract allowed him to exclude the RX savings it would still be deceptive. Perhaps that's an issue for summary judgment but here what we're focused on with equitable estoppel is looking at you know does the complaint rely on contract the contract terms is it is it viable without reference to the contract. Here again where the plaintiff never even saw the contracts the district court found the claims were plausibly alleged without relying on the contract terms is not seeking to hold Rite Aid liable for violating the terms of any contract and where Rite Aid concedes that the contract itself doesn't rely on any contract and that's why it's concocted this response to interrogatories as their only basis to show that there's some reliance on a contract. I'm not sure that I'm not positive that I got an answer if I phrased the question in a way that phrased it properly. Is the definition of usual and customary price legally enforceable in this setting and if so by whom? My understanding of the claims is that there's a common definition of usual and customary prices. Industry standards there's a welfare institutions code provision which is cited in the complaint. It's a sort of there's a common knowledge of what usual and customary means which means the lowest price cash paying price that's that's what usual and customary pricing means in the industry and so the fact that Rite Aid did not use their RX savings program pricing and calculating the usual and customary prices meant that they were misrepresenting over inflating the price. What is the regulation you said it was you relied upon it was on welfare and institutions code is that what you said? Um what that's one of the sources that sort of demonstrates what let me put this what what is the best non-contractual source of the definition of you know usual and customary price from your perspective? From the NCPDP. From the what? The National Council on Prescription Drug Programs the industry standard which defines it. The National Council on what? PDP. Is that an industry association do they have any legal status? I'm sorry I don't know I don't know the answer to that your honor but it's sort of an industry widely as as pled as a district court found it was the widely accepted standard in the in the industry and a common understanding of what usual and customary prices means. Do either of my colleagues have additional questions for Mr. Love? If not we thank you Mr. Love. Ms. Schuster you have some rebuttal time. Thank you your honors just a few points. One the California Welfare and Institution Code statute that Mr. Love just mentioned on its face applies a definition of usual and customary price only to submission for reimbursement Medi-Cal claim submissions. It has no application to the private insurance transactions at issue here. Those are governed exclusively by contract. To answer Judge Akuta's question the NCPDP is a is an industry association it is not a existence of the industry standard that plaintiff alleges that standard if it exists is not privately enforceable without an independent source of that obligation. There's no statute on point identified one the only source the plaintiff has identified are the contracts between Rite Aid and his insurance companies or PBMs and that's what requires the reporting of the usual and customary price. It's a defined contract term and if the plaintiff is able to show deception deceptive practices which he said is sort of the key element to his claims that can only be shown by a deviation from the contractual obligations. What is your best argument that Rite Aid has not waived its right to arbitrate this claim? Sure your honor I mean aside from the fact that question has been delegated and is not proper for the court to resolve. Well that's for us to decide isn't it? It is your honor but I'd say under Supreme Court precedent that question has been delegated but I would say that a plaintiff affirmatively represented that he was not relying on contract terms in order to defeat a motion to dismiss who refused to provide basic information to enable Rite Aid to identify which contracts were at issue or to verify his identity and who obscured his identity with false allegations in the complaint equitably cannot meet his very heavy burden to prove waiver. District Court found waiver based on finding that Rite Aid should have known about the existence of its arbitration right pre-discovery but that is the wrong standard. Waiver is not forfeiture. Waiver must be an intentional relinquishment of a known right and this court's precedents make clear in particular the Royal Air case that when waiver is predicated on inquiry notice it's in facts of inquiry notice it is not intentional and therefore it's not. Rite Aid certainly knew about this contract because it was a party. It is not a party your honor. I'm sorry? Rite Aid is also a subsidiary that it's wholly controlled hold own subsidiary. It knew about it uh and uh it uh it relies upon it uh do you are you contending that um Mr Stafford knew about these contracts uh at the time that the lawsuit was filed? Sure your honor uh so Rite Aid is not a signatory to the contracts it's subsidiaries. I think that's kind of a weak argument if you're relying on a wholly owned subsidiary as the basis. Right so the subsidiary had 95 pharmacy contracts over the following period. Mr Stafford provided no information for us to whittle down from that which of the pharmacy contracts were relevant to his claims much less determine if those contracts included arbitration provisions. Whether the plaintiff knew about the contracts in particular is not relevant to the equitable estoppel inquiry but the complaint shows in particular at paragraph 32 that plaintiff is aware that there are these contracts in the industry that define usual and customary price. He just didn't identify which specific contracts were relevant to his claims because he didn't give details. Okay let me ask my colleagues who either of my colleagues have additional questions other than Schuster. I just have one um so on the issue of the delegation clause so just so I understand your position as a district judge this is the kind of issue I think about your position is that the district court has no role um a lawsuit is filed somebody brings in a an agreement that has a delegation clause and the district judge has no role in deciding whether it um whether the parties have an agreement to arbitrate. That's not our position once the court finds what is the role of the district the court's role when there's a delegation clause to determine at first is there a contract and that's what equitable estoppel resolves here and then second is there a delegation clause if there's a delegation clause that's where the district court's role ends under supreme court's decisions interpreting the division of authority between arbitrators and courts on the federal arbitration act. So the court determines is there a contract and then does that contract contain a delegation clause if the answer to both questions are yes the court has to compel arbitration lacks discretion. Are you relying on the the incorporation of the rules the AANHRA rules for the delegation clause? Yes we are your honor. But what's the supreme court case that you say takes the district court out of the second step because of delegation? The most recent case is Henry Schein um that was the case where the fifth circuit had uh in the face of a delegation clause that it wasn't going to delegate because it the supreme court rejected that and said even if you think it's wholly groundless even if you don't you disagree with the argument the question is for the arbitrator to decide not the court when there is a delegation. That's once the that's once the court determines that there is a contract right? Correct. And am I remembering correctly that in Schein there was also a reliance on the rules uh on the reference to the rules? That's correct your honor that's what I thought. Okay other questions by my colleague? Thanks to both counsel for your argument in this case um the case disarguted Stafford versus Rite Aid Corporation is now submitted.
judges: M. Smith, Ikuta, Vratil